UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FERN WERMAN,

                Plaintiff,

   v.

NORDSTROM, INC., et al.,

                Defendants.
-----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
24-CV-8006-SJB-AYS

**BULSARA, United States District Judge:**

After she was fired, Plaintiff Fern Werman filed this action against Nordstrom, Inc., as well as Fernanda Lizama and Elizabeth Cardona, Werman's former managers, (together, "Defendants"), alleging that Defendants violated various federal and state laws, including Title VII of the Civil Rights Act of 1964, § 1981 of the Civil Rights Act of 1866, the Age Discrimination in Employment Act ("ADEA"), and the New York State Human Rights Law ("NYSHRL"). Werman alleges that Defendants discriminated against her and promoted a discriminatory and hostile work environment. (Compl. dated Nov. 18, 2024, Dkt. No. 1 ¶¶ 41–75). Defendants have moved to compel arbitration, (Defs.' Mot. to Compel Arb. ("Defs.' Mot. to Compel") dated Jan. 31, 2025, Dkt. No. 21-1), pursuant to the terms of a 2022 arbitration agreement, which Werman opposes, (Pl.'s Opp'n to Defs.' Mot. to Compel Arb. dated Mar. 3, 2025 ("Pl.'s Opp'n"), Dkt. No. 21-7). For the reasons explained below, the motion is granted.

DISCUSSION

"[T]he Federal Arbitration Act (the 'FAA') creates a 'body of federal substantive law of arbitrability' applicable to arbitration agreements[.]" *All. Bernstein Inv. Rsch. &*

*Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  "[B]ecause the FAA puts arbitration clauses 'on an equal footing with other contracts,'" *Certain Underwriters at Lloyds, London v. 3131 Veterans Blvd LLC*, 136 F.4th 404, 409 (2d Cir. 2025) (quoting *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024)), an arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022) (explaining that Section 2 "renders agreements to arbitrate enforceable as a matter of federal law"); *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (noting that Section 2 reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution").

I.     **Agreement to Arbitrate**

"Arbitration is a matter of contract and consent, and . . . disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes." *Coinbase*, 602 U.S. at 145.  "Questions concerning the formation and existence of an arbitration agreement must be resolved by courts in the first instance." *Olin Holdings Ltd. v. State*, 73 F.4th 92, 101 (2d Cir. 2023).  Therefore, "parties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–301 (2010)).

"To determine whether parties agreed to arbitrate," the Court must "consider all relevant, admissible evidence submitted by the parties," drawing "all reasonable inferences in favor of the non-moving party"—a standard akin to summary judgment. *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 115 (2d Cir. 2025) (quotations omitted). The party seeking to arbitrate bears the burden on this threshold issue. *Id.* "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

"The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).[1] New York law requires a "meeting of the minds" and a "manifestation of mutual assent" to form a binding contract. *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288–89 (2d Cir. 2019) (quoting *Express Indus. & Terminal Corp. v. N.Y. Dep't*

---

[1] Here, the relevant agreement Defendants wish to enforce does not contain a choice of law provision, nor do the parties address what law governs. But both parties proceed as though the agreement is governed by New York law. (*See* Pl.'s Opp'n at 1–3; Defs.' Mot. to Compel at 7–10; Pl.'s Suppl. Mem. in Opp'n to Mot. to Compel Arb. dated July 3, 2025, Dkt. No. 22 at 2). And this election resolves the choice of law issue—the Court applies New York law to interpret the contract. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 223 (2d Cir. 2014) ("[P]arties by their acquiescence . . . may induce the trial court to assume that foreign law is similar to that of the forum, with the result that a court does not err when it articulates its decision by reference to the law of the forum." (quotations omitted)); *e.g.*, *Blodgett v. Siemens Indus., Inc.*, No. 13-CV-3194, 2018 WL 385477, at *5 (E.D.N.Y. Jan. 11, 2018) ("Plaintiffs' . . . citation solely to New York law in support of their . . . claims in their prior submissions is deemed by this Court to constitute an implied consent to use New York law, which settles the choice of law issue in favor of the application of New York law.").

3

*of Transp.*, 93 N.Y. 2d 584, 589 (1999)).  Importantly, mutual assent does not require actual notice, because inquiry notice is sufficient: "[u]nder New York law, when an offeree does not have *actual* notice of certain contract terms, he is nevertheless bound by such terms if he is on *inquiry* notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." *Davitashvili*, 131 F.4th at 115–16 (quotations omitted); *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74–75 (2d Cir. 2017) (applying California law and noting even absent "actual notice of the terms of the agreement, the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms"); *Wu v. Uber Techs., Inc.*, 43 N.Y.3d 288, 299 (2024) ("[T]here is no requirement that a party have correctly understood—or even reviewed—the terms presented by the offeror for their manifestation of acceptance to be effective.  Instead, courts ask whether the offeree was put on inquiry notice of the contractual terms.").  To determine whether an offeree has inquiry notice of a contractual term, "New York courts evaluate whether the term was obvious and whether it was called to the offeree's attention—an analysis that often turns on whether the contract terms were presented to the offeree in a clear and conspicuous way." *Davitashvili,* 131 F.4th at 116 (quotations omitted).

Nordstrom hired Werman as a salesperson on July 30, 2013, and Werman continued to work in that capacity until she was terminated on September 26, 2023. (Compl. ¶¶ 17–19; Decl. of Justin Fischbeck dated Jan. 13, 2025 ("Fischbeck Decl."), Dkt. No. 21-2 ¶ 7).  Nordstrom contends that Werman signed and executed a binding Dispute Resolution Agreement (the "2012 DRA") when she was hired that provided

4

that Nordstrom and Werman would resolve certain employment-related disputes in arbitration. (Fischbeck Decl. ¶¶ 4, 10–12). In December 2022, Nordstrom amended the DRA. (*Id.* ¶ 16). Nordstrom sent notice of the amended DRA, (the "2022 DRA"), to all Nordstrom employees at their work and personal email addresses on December 15, 2022, uploaded the 2022 DRA to Werman's Workday account on December 13, 2022, and posted the 2022 DRA on Nordstrom's intranet site in December 2022. (*Id.* ¶¶ 17–19). The 2022 DRA, like the 2012 DRA, provides that certain disputes are subject to arbitration. The 2022 DRA states in relevant part:

> You and Nordstrom hereby knowingly agree that legal claims and disputes covered by this Agreement will only be resolved in final and binding arbitration (and not by way of a court or jury trial) . . . .
>
> . . . Except as provided otherwise, this Agreement applies mutually to any legal disputes arising out of or related to your application for employment with Nordstrom, your employment with Nordstrom, or the termination of your employment with Nordstrom ("Covered Disputes"). This Agreement applies to any Covered Disputes that Nordstrom may have against you or you may have against: (1) Nordstrom or one of its affiliates, subsidiaries, or parent companies ("Nordstrom"); (2) Nordstrom's officers, directors, principals, shareholders, members, owners, employees, or agents . . . .
>
> . . . Covered Disputes include, but are not limited to, claims arising under the Uniform Trade Secrets Act, the Fair Credit Reporting Act, the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Rehabilitation Act, the Civil Rights Acts of 1866 and 1871, the Civil Rights Act of 1991, the Pregnancy Discrimination Act, the Equal Pay Act, the Americans With Disabilities Act, the Age Discrimination in Employment Act (including the Older Workers Benefit Protection Act), the Family Medical Leave Act, the Fair Labor Standards Act, Affordable Care Act, the Genetic Information Non-Discrimination Act, the Occupational Safety and Health Administration Act, the Uniformed Services Employment and Reemployment Rights Act, the Worker Adjustment and Retraining Notification Act, Employee Retirement Income Security Act ("ERISA") for breach of fiduciary duty or for penalties based on allegations that any Nordstrom benefit plan violates the requirements of ERISA, claims arising under sections 601-607 of ERISA (relating to continuation coverage under group health plans), or

5

> other claimed violations of ERISA (including but not limited to claims under section 510 of ERISA, even if such claims are combined with a claim for employee benefits), and other state and local statutes or regulations addressing the same or similar subject matters, and all other federal or state legal claims, regardless of when the dispute arises.

(2022 DRA, attached to Fischbeck Decl. as Ex. B, Dkt. No. 21-4 at 3).  The only material difference relevant here between the 2012 DRA and the 2022 DRA is the scope of the delegation clause.  While the 2012 DRA provides that "disputes regarding the enforceability, revocability or validity of the Agreement or any portion of the Agreement . . . can be resolved only by a court of competent jurisdiction," (2012 DRA, attached to Fischbeck Decl. as Ex. A, Dkt. No. 21-3 at 2), the 2022 DRA provides "disputes relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable, are Covered Disputes and shall be decided by the arbitrator," (2022 DRA at 3–4).

The notice Nordstrom provided of the 2022 DRA, through multiple channels, clearly and conspicuously called attention to its arbitration terms.  (Email dated Dec. 15, 2022, attached to Fischbeck Decl. as Ex. C, Dkt. No. 21-5 at 6).  Under the capitalized header "KEY POLICY UPDATES," the email identified in bold lettering "Important Dispute Resolution Program Updates (U.S. Only)."  (*Id.*).  Under this subheading, the email said: "We have recently made important updates to our Dispute Resolution program and encourage you to take time to review them carefully."  (*Id.*)  And the email included a hyperlink to material titled "Dispute Resolution Program: 2022 Update," which included a copy of the 2022 DRA.  (*Id.*; Fischbeck Decl. ¶ 19).  And in addition to

6

the email, Nordstrom uploaded the 2022 DRA to Werman's Workday account in the same location as other her other employment documents (*e.g.*, wage notices) and separately posted it on the Nordstrom intranet site, which employees use to access other important resources relating to their employment. (Fischbeck Decl. ¶¶ 17–18).

Based on this distribution, Nordstrom contends that Werman had inquiry notice of the 2022 DRA, and that her continued employment with Nordstrom manifested her assent to the terms of the agreement. (Defs.' Suppl. Mem. in Supp. of Mot. to Compel Arb. dated July 9, 2025 ("Defs.' Suppl. Mem."), Dkt. No. 23 at 4–6). The Court agrees.

The multiple forms of notice given by Nordstrom were sufficient to put a reasonably prudent person on inquiry notice. Werman contends she received "no notice whatsoever" of either DRA, and therefore no agreement to arbitrate was formed. (Pl.'s Suppl. Mem. in Opp'n to Mot. to Compel Arb. dated July 3, 2025, Dkt. No. 22 at 2–3). She claims she does not use computers, and she never accessed her work email or her Workday account, and therefore could not have received the 2022 DRA. (Decl. of Fern Werman dated Mar. 3, 2025 ("Werman Decl."), Dkt. No. 21-8 ¶¶ 5, 9–10). But Werman does not dispute Nordstrom's notices were sent to the identified work and personal email addresses, or that the email addresses Nordstrom sent the notices to, including a personal email address, belonged to her. Nor does Werman contest that Nordstrom posted the notice to her Workday account or to the Nordstrom intranet. Werman's claim of not using computers—without refuting Nordstrom's sending of the notice or the delivery to the email accounts—amounts to an assertion of not reading the

7

notices. That cannot avoid inquiry notice of the contract terms.[2] *See, e.g.*, *Meyer*, 868 F.3d at 79 ("As long as the hyperlinked text was itself reasonably conspicuous . . . a reasonably prudent smartphone user would have constructive notice of the terms. While it may be the case that many users will not bother reading the additional terms, that is the choice the user makes; the user is still on inquiry notice."); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 550 (S.D.N.Y. 2018) ("Plaintiffs both acknowledge receiving emails with 'notices that Airbnb had updated its Terms of Service.'. . . The fact that Plaintiffs failed to actually read the TOS on those occasions, or on any other occasion, does not help them." (citations omitted)); *Coe v. Coca-Cola Co.*, 702 F. Supp. 3d 140, 156–57 (W.D.N.Y. 2023) ("Whether [Plaintiff] actually clicked the hyperlink and read the Terms of Use before agreeing to them is of no moment.").

In any event, Nordstrom has demonstrated that there is no material issue in dispute about whether Werman used computers. It provided evidence that Werman's Workday account was accessed from mobile and desktop devices 136 times from November 2018 to August 2023, (Report of Workday Account, attached to Suppl. Fischbeck Decl. as Ex. C, Dkt. No. 21-13), and that Werman electronically executed other documents while employed at Nordstrom including as late as February 2020, (*see e.g.*,

---

[2] In *Schnabel v. Trilegiant Corp.* the Second Circuit noted that the fact that "someone has received an email does not without more establish that he or she should know that the terms disclosed in the email relate to a service in which he or she had previously enrolled and that a failure to affirmatively opt out of the service amounts to assent of those terms." 697 F.3d. 110, 126 (2d. Cir. 2012). But this case presents different facts than those in *Schnabel*, where "an unsolicited email from an online consumer business" was deemed insufficient to put consumers on inquiry notice. *Id.* at 123. Werman was an employee of Nordstrom, and the emails Nordstrom sent to her pertaining to her employment cannot be characterized as unsolicited.

8

Ms. Werman's I-9, attached to Suppl. Fischbeck Decl. as Ex. B, Dkt. No. 21-12; Nordstrom Commission Agreement & Certificate of Completion, attached to Suppl. Fischbeck Decl. as Ex. D, Dkt. No. 21-14). Werman's conclusory denial of computer use—which cites to no other evidence and is plainly contradicted by all the evidence submitted by Nordstrom—cannot create a factual dispute on this issue. *Guerriero v. Sony Elecs. Inc.*, No. 21-CV-2618, 2022 WL 736428, at *2 (S.D.N.Y. Mar. 11, 2022) ("The party opposing arbitration 'may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried.'" (quoting *Neidhardt*, 56 F.3d at 358)); *DuBois v. Macy's E. Inc.*, 338 F. App'x 32, 33–34 (2d Cir. 2009); *e.g.*, *Saleh v. Digital Realty Tr., Inc.*, No. 21-CV-9005, 2022 WL 3139733, at * 5 (S.D.N.Y. Aug. 5, 2022) ("[Plaintiff's] outright denial, standing alone, would not necessarily be an insufficient basis on which to deny the motion to compel arbitration. But it must be considered alongside all relevant admissible evidence, which may refute the denial. [W]here the facts alleged in a nonmovant's declaration are so contradictory that doubt is cast upon their plausibility, then absent other evidence, granting the motion to compel may be appropriate." (quotations omitted)).

Werman's claims that she never read her emails, checked her Workday account, or checked the Nordstrom intranet, even if true—which they appear not to be—still would not be enough to avoid inquiry notice. She is held to the standard of a reasonably prudent person, which is someone who has basic facility with computers, even if they choose not to exercise that ability. *See Wu*, 43 N.Y.3d at 303 ("[A] user does not need to have actually read and understood the terms of an internet contract to be so

9

bound; rather, where a reasonably prudent user would have been on inquiry notice of contractual terms, an offeree may still be bound by them. A reasonably prudent user is one who is neither highly savvy nor a complete stranger to computers or smartphones—that is, someone who has general familiarity with how to navigate a website, use a scroll bar, recognize a hyperlink, and download an application." (quotations omitted)); *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023) ("Who is the reasonably prudent internet or smartphone user? The standard does not require us to imagine a user who has never before encountered a smartphone app or entered into an online contract." (quotations omitted)). And because a reasonably prudent person would have been able to access the multiple notices that Nordstrom sent, Werman is deemed to have inquiry notice of the 2022 DRA.

Having concluded that Werman had inquiry notice of the 2022 DRA, the Court turns to whether Werman's conduct manifested assent to its terms. The 2022 DRA provided to employees: "YOU KNOWINGLY ACCEPT AND AGREE TO THE NORDSTROM DISPUTE RESOLUTION AGREEMENT BY . . . CONTINUING YOUR EMPLOYMENT WITH NORDSTROM FOR FIVE (5) DAYS AFTER YOU RECEIVE THIS AGREEMENT." (2022 DRA at 9). After Nordstrom sent notice of the 2022 DRA to Werman in December 2022, Werman continued to work for Nordstrom for approximately nine months until her termination in September 2023. (*See* Fischbeck Decl. ¶¶ 7, 17–18; Werman Decl. ¶ 4). This conduct—continuing to work for Nordstrom—is sufficient basis to conclude, under New York law, that Werman agreed to the contract terms, including the arbitration provisions. *See, e.g.*, *Manigault v. Macy's*

10

*E., LLC*, 318 F. App'x 6, 8 (2d. Cir. 2009) ("Manigault continued to work after receiving notice of the SIS program.  Manigault therefore agreed to arbitration by continuing with her employment. . . . New York, unlike other jurisdictions, has found that continued employment, without more, is sufficient to manifest assent." (citations omitted)); *Brown v. St. Paul Travelers Cos.*, 331 F. App'x 68, 70 (2d Cir. 2009) (finding plaintiff's "continued employment after . . . repeated notifications [that she was responsible for understanding all company employment policies] lends force to the presumption that she agreed to be bound to the arbitration policy"); *Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390, 400 (S.D.N.Y. 2013) (finding employee manifested assent to arbitration agreement by continuing to work for employer after the date specified in the agreement).[3]  Accordingly, Werman is bound by the terms of the 2022 DRA.

The Court now turns to whether Werman's claims fall within the scope of the arbitration clause in the 2022 DRA.  Werman's Complaint asserts a series of discrimination claims against Defendants.  (Compl. ¶¶ 41–75).  The factual allegations that form the basis for these claims relate to a series of 2023 events that culminated in her termination from Nordstrom.  Werman alleges that beginning in May 2023, her managers, Defendants Lizama and Cardona, began issuing "petty warnings" to her for minor transgressions to "garner enough disciplinary issues so that her termination would appear justified."  (*Id.* ¶ 22).  In September 2023, Werman alleges that a coworker asked her why she was working on a Tuesday, and she responded that she did not

---

[3] Having concluded that Werman had inquiry notice of the 2022 DRA and manifested assent to be bound by the terms of the 2022 DRA, the Court need not resolve the parties' competing allegations about the 2012 DRA.

11

work on Monday because she is Jewish and observes Yom Kippur. (*Id.* ¶ 28). Werman alleges the coworker then told her "I could care less about your religion," and Werman then mumbled an expletive. (*Id.* ¶¶ 28–29). Following this interaction, on September 26, 2023, Werman was called into the office by Cardona and terminated from her job. (*Id.* ¶ 30). Because the 2022 DRA went into effect in December 2022, the 2022 DRA predates all of Werman's allegations, and governs all her claims.

Werman's claims against Defendants are also "Covered Disputes" under the 2022 DRA, and therefore Werman must arbitrate these disputes. The 2022 DRA requires arbitration of "any legal disputes arising out of or related to your application for employment with Nordstrom, your employment with Nordstrom, or the termination of your employment with Nordstrom ('Covered Disputes')." (2022 DRA at 3). Each of Werman's claims arises out of her employment with Nordstrom or her termination from Nordstrom, and many of Werman's claims are specifically listed as "Covered Disputes" in the 2022 DRA. (*See id.*).

Werman asserts that Defendants violated § 1981 of the Civil Rights Act of 1866 and NYSHRL by discriminating against her based on her ethnicity and religion, (Compl. ¶¶ 50–54, 68–75), that Nordstrom violated Title VII by discriminating against her on the basis of race, religion, and national origin and fostering a hostile work environment, (*id.* ¶¶ 41–46), and that Nordstrom violated the ADEA by discriminating against her based on her age, (*id.* ¶¶ 59–67). All of the federal statutes are specifically listed in the 2022 DRA's list of claims that require arbitration. (*See* 2022 DRA at 3). And the list of claims also includes "other state and local statutes or regulations addressing

12

the same or similar subject matters, and all other federal or state legal claims,"  encompassing Werman's NYSHRL claim. (*Id.*).

Therefore, Werman's claims fall within the scope of the 2022 DRA's arbitration clause.[4]  *E.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 243 (S.D.N.Y. 2020) (concluding that agreements' broad arbitration clauses captured "any possible type of employment-related dispute between the signatories, including claims for discrimination under Title VII and the NYCHRL") (collecting cases), *objections overruled*, No. 10-CV-6950, 2021 WL 4199912 (Sep. 15, 2021).

## II.     The Delegation Clause

In *Rent-A-Center, West, Inc. v. Jackson*, the Supreme Court explained that there are two types of challenges to arbitration agreements: the first type challenges "specifically the validity of the agreement to arbitrate," while the second challenges "the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." 561 U.S. 63, 70 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)).

This second type of challenge is a question of whether a dispute is arbitrable, and includes the question of unconscionability. *See id.* at 68–69, 72 (finding that

---

[4] Werman does not contest that Defendants Lizama and Cardona can invoke the 2022 DRA.  Nonetheless, by its terms, the 2022 DRA encompasses Werman's claims against Lizama and Cardona because they are "employees" of Nordstrom. (*See* 2022 DRA at 3 ("This Agreement applies to any Covered Disputes that Nordstrom may have against you or you may have against: (1) Nordstrom or one of its affiliates, subsidiaries, or parent companies ('Nordstrom'); (2) Nordstrom's officers, directors, principals, shareholders, members, owners, employees, or agents[.]")).

13

plaintiff's unconscionability challenge "to the validity of the contract as a whole" was a "gateway question of arbitrability" properly addressed to the arbitrator based on the contract's delegation provision). Courts are generally tasked with deciding whether a dispute is arbitrable, unless "the parties agreed to submit the question of arbitrability itself to arbitration." *All. Bernstein Inv. Research & Mgmt.*, 445 F.3d at 125; *see Nicosia*, 834 F.3d at 229 ("The question of whether the parties have agreed to arbitrate, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). The only exception is if the party challenging arbitration challenges the delegation provision specifically. *Rent-A-Center*, 561 U.S. at 72 ("[U]nless [plaintiff] challenged the delegation provision specifically, we must treat it as valid . . . and must enforce it . . . leaving any challenge to the validity of the Agreement as a whole for the arbitrator."); *Davitashvili*, 131 F.4th at 118.

Werman contends that the arbitration agreements as a whole are procedurally and substantively unconscionable. (*See* Pl.'s Opp'n at 2–3, 6). She contends the arbitration agreements are procedurally unconscionable because she had no meaningful opportunity to review them, and because of the disparity in bargaining power between herself and Nordstrom. (*Id.* at 4–5). Werman further contends that the agreements are substantively unconscionable because they require her to waive her right to a judicial forum, which she contends is against public policy, and place severe restrictions on

14

discovery. (*Id.* at 6). Under the 2022 DRA, these are issues that are to be resolved in the first instance by the arbitrator.

It provides that: "disputes relating to the . . . unconscionability or waiver of this Agreement, including but not limited to any claim that all or any part of this agreement is void or voidable, are Covered Disputes and shall be decided by the arbitrator." (2022 DRA at 3-4). Werman's unconscionability challenges fall within that provision. And they are general, not specific to the delegation provision. (*See* Pl.'s Opp'n at 3, 6, 8 (stating generally that the "DRA and Amended DRA" are unconscionable)). As such, the arbitrator in the first instance must decide these challenges. *E.g.*, *Davitashvili*, 131 F.4th at 119 ("Plaintiffs argue that arbitration *in general* would be unconscionable. Our precedents require something more: Plaintiffs must show why allowing an arbitrator—as opposed to a court—to decide the question of arbitrability would be unconscionable. . . . Because Plaintiffs have not specifically challenged the delegation clause, we hold that their claims against Uber and Postmates should be sent to an arbitrator to determine whether those claims are arbitrable."); *Greene v. Kabbalah Ctr. Int'l, Inc.*, 625 F. Supp. 3d 3, 18 (E.D.N.Y. 2022) ("The law is clear that absent a specific challenge, the delegation of the questions of unconscionability and enforceability of an arbitration agreement to an arbitrator must be upheld."); *Vargas v. Bay Terrace Plaza LLC*, 378 F. Supp. 3d 190, 196–97 (E.D.N.Y. 2019) (holding that plaintiffs' unconscionability challenges "must . . . be addressed by an arbitrator in the first instance" where the plaintiffs did not raise a "specific challenge" to the delegation clause).

CONCLUSION

The motion to compel arbitration is granted. Defendants and Werman are directed to proceed in arbitration. The Clerk of Court is directed to administratively close this case. *Zimmerman v. UBS AG*, 789 F. App'x 914, 916 (2d Cir. 2020) ("As a result, the district court's order to 'close' the case with leave to reopen within 30 days of the conclusion of arbitration proceedings functionally amounted to a stay of the proceedings, notwithstanding that the case would end if the parties chose not to reinstate it."); *see also Bernardino v. Barnes & Noble Booksellers, Inc*, 763 F. App'x 101, 103 (2d Cir. 2019) ("[T]his Court has previously determined that there is 'no jurisdictional significance to [a] docket entry marking [a] case as 'closed,' which we will assume was made for administrative or statistical convenience.'"(quoting *Filanto, S.p.A. v. Chilewich Int'l Corp.*, 984 F.2d 58, 61 (2d Cir. 1993))).

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:  December 17, 2025
       Central Islip, New York

16